## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Yukos Capital Limited,
(f/k/a Yukos Capital S.à.r.l.)

                    *Petitioner*,

        *v.*

The Russian Federation,

                    *Respondent*.

**Civil Action No. 1:22-cv-00798**

**Petitioner Yukos Capital Limited's Memorandum of Law**
**<u>in Support of its Motion for Default Judgment</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... ii

BACKGROUND ................................................................................................... 2

    I.     Russia Expropriates Yukos Oil and Yukos Capital's Investments ...................... 2

    II.    Yukos Capital Initiates Arbitration Pursuant To The Energy Charter Treaty ...... 4

    III.   An Arbitral Tribunal Awards Yukos Capital More Than $5 Billion ................... 6

    IV.   Yukos Capital Seeks To Confirm Its Arbitral Award In This Court ................... 7

ARGUMENT ....................................................................................................... 8

    I.     This Court Has Subject-Matter Jurisdiction Over This Action And
         Personal Jurisdiction Over Russia Under The FSIA ................................................. 9

    II.    Yukos Capital Served Russia Pursuant To The FSIA ........................................ 13

    III.   The Award Should Be Confirmed Under The New York Convention .............. 15

    IV.   This Court Should Enter Judgment In The Amount Of The Award, Plus
         Interest ...................................................................................................... 19

CONCLUSION ........................................................................................................ 211

## TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Africard Co. Ltd. v. Republic of Niger*,
210 F. Supp. 3d 119 (D.D.C. 2016).................................................................11, 12, 16, 18, 19

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
668 F.3d 724 (D.C. Cir. 2012).................................................................................................9

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
794 F.3d 99 (D.C. Cir. 2015)................................................................................................12

*Chevron Corp. v. Ecuador*,
795 F.3d 200 (D.C. Cir. 2015).......................................................................................10, 12

*Compagnie Sahelienne d'Entreprise v. Republic of Guinea*,
2021 WL 2417105 (D.D.C. June 14, 2021)...........................................................................17

*Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
932 F. Supp. 2d 153 (D.D.C. 2013).......................................................................................20

*Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
697 F. Supp. 2d 46 (D.D.C. 2010).........................................................................................18

*Creighton Ltd. v. Gov. of the State of Qatar*,
181 F.3d 118 (D.C. Cir. 1999).......................................................................................10, 11

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
244 F. Supp. 3d 100 (D.D.C. 2017).......................................................................................19

*Customs & Tax Consultancy LLC v. Democratic Republic of Congo*,
2019 WL 4602143 (D.D.C. Sept. 23, 2019).............................................................17, 18, 19

*Energoinvest DD v. Democratic Republic of Congo*,
355 F. Supp. 2d 9 (D.D.C. 2004)..........................................................................................16

*Firebird Global Master Fund II Ltd. v. Republic of Nauru*,
915 F. Supp. 2d 124 (D.D.C. 2013).........................................................................................8

*G.E. Transp. S.P.A. v. Republic of Albania*,
693 F. Supp. 2d 132 (D.D.C. 2010).......................................................................................19

*Gold Reserve, Inc. v. Bolivian Republic of Venezuela*,
146 F. Supp. 3d 112 (D.D.C. 2015).........................................................................................9

*LLC Komstroy v. Republic of Moldova*,
2019 WL 3997385 (D.D.C. Aug. 23, 2019) ..........................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

*Maalouf v. Islamic Republic of Iran,*
    923 F. 3d 1095 (D.C. Cir. 2019).................................................................8

*Republic of Sudan v. Harrison,*
    139 S. Ct. 1048 (2019)...........................................................................13

*Saudi Arabia v. Nelson,*
    507 U.S. 349 (1993)................................................................................9

*Schwartz v. Islamic Republic of Iran,*
    2022 WL 1567358 (D.D.C. May 18, 2022).................................................20

*Stati v. Republic of Kazakhstan,*
    199 F. Supp. 3d 179 (D.D.C. 2016)..........................................................13

*Sterling Merch. Fin. Ltd. v. Republic of Cabo Verde,*
    261 F. Supp. 3d 48 (D.D.C. 2017)....................................................9, 17, 18

*Stileks v. Republic of Moldova,*
    985 F.3d 871 (D.C. Cir. 2021).............................................................12, 20

*Tatneft v. Ukraine,*
    301 F. Supp. 3d 175 (D.D.C., 2018), *aff'd* 771 F. App'x 9 (D.C. Cir. 2019)...........12

*Tatneft v. Ukraine,*
    771 F. App'x 9 (D.C. Cir. 2019)...............................................................10

*Techsnabexport v. Globe Nuclear Serv.,*
    404 F. App'x 793 (4th Cir. 2010)..............................................................18

**STATUTES**

9 U.S.C. §§ 201-208 ...............................................................................1, 7

9 U.S.C. § 203 .........................................................................................11

9 U. S.C. § 207.................................................................................9, 16, 17

28 U.S.C. § 1330(a) .................................................................................10

28 U.S.C. § 1330(b) .................................................................................10

28 U.S.C. § 1605 ......................................................................................9

28 U.S.C. § 1605(a)(1)..............................................................................10

28 U.S.C. § 1605(a)(6)..............................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

28 U.S.C. § 1608(a) .................................................................................................13

28 U.S.C. § 1608(a)(1) ..............................................................................................14

28 U.S.C. § 1608(a)(2) ..............................................................................................14

28 U.S.C. § 1608(a)(3)........................................................................................1, 7, 14

28 U.S.C. § 1608(c)(2) ..............................................................................................15

28 U.S.C. § 1608(d) ..................................................................................................15

28 U.S.C. § 1608(e) ....................................................................................................8

28 U.S.C. § 1961 ..........................................................................................19, 20, 21

**OTHER AUTHORITIES**

Board of Governors of the Federal Reserve System, *Data Download Program*,
   https://bit.ly/3LCaD8A ......................................................................................20

*Russian Federation: Service of Process*, Travel.State.Gov, bit.ly/3DJjGmq ..............................14

## INTRODUCTION

Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517 (the "New York Convention"), and its implementing legislation, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, Petitioner Yukos Capital Limited ("Yukos Capital") initiated this action to confirm a $5,033,254,794.28 arbitral award (the "Award," ECF No. 1-2) issued on July 23, 2021 in Permanent Court of Arbitration ("PCA") Case No. 2013-31 against Respondent the Russian Federation ("Russia"), following arbitration proceedings seated in Geneva, Switzerland.  *See* ECF No. 1.  In accordance with the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a)(3), Yukos Capital effected service of process on Russia on June 29, 2022, *see* ECF No. 13, but Russia failed to file an answer or responsive pleading within sixty days, as required by § 1608(d).  As a result, Yukos Capital requested entry of default against Russia under Federal Rule of Civil Procedure 55(a) on September 6, 2022.  ECF No. 14.  The clerk duly entered a notice of default on September 9, 2022.  ECF No. 17.  Yukos Capital now moves for entry of default judgment under 28 U.S.C. § 1608(e).

As set forth below, Yukos Capital is entitled to relief.  This Court possesses subject-matter jurisdiction over Yukos Capital's Petition and personal jurisdiction over Russia pursuant to the FSIA.  Though Russia appeared after the entry of default and moved to dismiss for lack of service of process, Russia's motion lacks merit, and Yukos Capital has adequately served Russia, as fully explained in Yukos Capital's contemporaneously filed opposition to Russia's motion to dismiss. Yukos Capital has also satisfied the procedural requirements of the New York Convention in filing with this Court an apostilled copy of the Award and official copies of the treaty—the Energy Charter Treaty ("ECT," ECF No. 1-5)—containing Russia's agreement to arbitrate the dispute and of Yukos Capital's Notice of Arbitration (ECF No. 1-3).  The Court need not resolve whether Russia could meet its high burden to demonstrate that the limited defenses in the New York

Convention apply because Russia did not timely appear to invoke them.  But even if it had, Russia would not succeed.  Accordingly, the New York Convention compels this Court to confirm the Award and enter judgment for Yukos Capital.

## BACKGROUND

### I. Russia Expropriates Yukos Oil and Yukos Capital's Investments

This action to enforce the Award arises from Russia's illegal expropriation of Yukos Capital's multi-billion-dollar investments in Yukos Oil Company ("Yukos Oil" or "Yukos") in the form of two loans made in 2003 and 2004.

Yukos Oil and its subsidiaries were once the largest producers of crude oil in Russia and also the largest exporters of crude oil from Russia, with Yukos Oil reaching a market capitalization estimated at over $40 billion in April 2004.  Award ¶ 638.  In 2003 and 2004, Yukos Capital— then an indirect, wholly-owned subsidiary of Yukos Oil, *id.* ¶¶ 97-98—provided Yukos Oil with necessary financing through two loans.  *Id.* ¶ 106.  The first loan totaled 80 billion rubles ($2.7 billion), with a repayment date of December 31, 2008, and the second loan totaled $355 million, with a repayment date of December 30, 2009.  *Id.* ¶¶ 106-07, 728-29.  Both loans provided for regular payment of interest and a daily penalty of 0.1% of any overdue payment.  *See id.*

Yukos's fortunes changed dramatically after its Chairman and controlling shareholder, Mikhail Khodorkovsky, openly criticized Vladimir Putin's regime in 2003.  *See* Award ¶¶ 114-61, 631.  The Russian state promptly initiated a series of politically motivated attacks against Yukos— which included arresting, charging, and convicting more than 40 Yukos Oil shareholders, executives, and employees—and executed a systematic plan to force Yukos back into the hands of the state.  *See id.*

The Russian government's expropriation began with its tax authorities "re-auditing" Yukos Oil for the tax years 2000-04 and finding large sums of back taxes supposedly owing.  Award

¶ 115-22. None of the related court proceedings or decisions were made public, and some of the court decisions were not even disclosed to Yukos itself. *E.g.*, *id.* ¶¶ 447-48. The resulting massive, fabricated back-tax claims were used first to seize and "auction" Yuganskneftegaz, Yukos's primary production subsidiary—through expedited proceedings devoid of any due process—and next to force the company into a sham bankruptcy. *Id.* ¶¶ 138-46, 150-61. Russian courts served as the rubber stamp for these illegal acts against Yukos Oil. *E.g.*, *id.* ¶¶ 156, 442-47. The rare judges who dared to deviate were removed and disciplined, while those who adhered to the party line were rewarded. *Id.* ¶¶ 126, 651-54. Yet, even while its assets were frozen to prevent Yukos from satisfying its outstanding debts and its most valuable asset, Yuganskneftegaz, was sold off to state-owned Rosneft for a bargain basement price in a rigged proceeding, Yukos remained very much solvent. *Id.* ¶¶ 138-46, 259. Nonetheless, Yukos was then liquidated, and its remaining assets were split between state-owned Rosneft and state-controlled Gazprom. *Id.* ¶¶ 163-67.

Yukos employees and associates were subjected to a brutal campaign of terror and intimidation designed to paralyze them and to deter any form of resistance. Award ¶¶ 114-61. Raids and seizures were regularly conducted by heavily armed units of government prosecutors. *Id.* ¶¶ 114-61, 444-45, 480-82. Countless persons associated with or assisting Yukos were interrogated, arrested, indicted, and, if they did not manage to escape from Russia in time, jailed. *Id.*

Due to Russia's illegal acts, Yukos Oil ceased making payments on the loans from Yukos Capital. Award ¶ 618-19. Yukos Capital communicated a formal notice of default to Yukos Oil with respect to both loans on November 11, 2005. *Id.* ¶ 399. Yukos Capital then filed an application in Russian court for its claims under the loans to be included among other Yukos Oil creditors' claims in the forced bankruptcy. *Id.* Yukos Capital's application was denied. *Id.*

Days after Yukos Capital appealed the denial, Russia's General Prosecutor's Office initiated a criminal case against Yukos Capital and its officers, conducting a search of the offices of Yukos Capital's Moscow attorneys, seizing their documents, and subjecting one of the attorneys to interrogation.  Award ¶ 444.  The pendency of this criminal investigation was then cited as grounds for suspending Yukos Capital's appeal.  *Id.* ¶ 446.  Subsequently, Yukos Capital's second application for its claims under the Loans to be included among other Yukos Oil creditors' claims was likewise denied.  *Id.* ¶ 447.

Shortly thereafter, Yukos Oil's remaining assets were sold off purportedly to satisfy its creditors' claims.  Award ¶ 164.  99% of the satisfied claims belonged to Russia's Federal Taxation Service and the Russian State-owned Rosneft.  *Id.* ¶ 165.  On November 15, 2007, the Yukos Oil bankruptcy proceedings were formally terminated and the unsatisfied creditor claims were declared expired.  *Id.* ¶ 166.  Yukos Capital's challenge to this decision was denied, and by November 21, 2007, Yukos Oil ceased to exist.  *Id.* ¶ 167.

## II.   Yukos Capital Initiates Arbitration Pursuant to the Energy Charter Treaty

Yukos Capital's investments in Yukos Oil—then a Russian company, Award ¶ 99—were protected by the ECT, a multilateral framework designed to promote open and competitive energy markets and cross-border cooperation in the energy sector, including by protecting foreign investors and encouraging stable, fair and transparent conditions for foreign investments.  *Id.* ¶¶ 168, 200; ECT, preamble (ECF No. 1-3 at 37-39).  States that join the ECT ("Contracting Parties") accept various obligations towards investors of other Contracting Parties and agree to arbitrate disputes resulting from breaches of those obligations.  In the event of a "[d]ispute[] between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former," "the Investor party to the dispute" is entitled to "provide its consent in writing for the dispute to be submitted to," *inter alia*, an "ad hoc arbitration tribunal

established under the Arbitration Rules of the United Nations Commission on International Trade Law" (the "UNCITRAL Rules").  ECT, art. 26(1)-(4).

Russia signed the ECT on December 17, 1994, and accepted provisional application of the ECT pending ratification.  Interim Award on Jurisdiction ("Interim Award"; included as pp. 359-562 of ECF No. 1-2) ¶ 32.  The ECT entered into force with respect to Russia in April 1998, making Russia a Contracting Party to the ECT.  *See* ECT, art. 1(2) (defining a "Contracting Party" as "a state . . . which has consented to be bound by this Treaty and for which the Treaty is in force").  And Russia remained bound by the ECT until at least October 2009, long after completing its expropriation of Yukos Capital's investments, the Loans.  Interim Award ¶ 33; *see also* ECT, art. 45(3).  In October 2009, Russia withdrew from the ECT, *id.*, but pursuant to the ECT's terms, Russia remained bound by the ECT with respect to its past conduct, *see* ECT, art. 47(3).

Because at all relevant times Yukos Capital was incorporated in Luxembourg, a Contracting Party to the ECT, Yukos Capital qualifies as an "investor of another Contracting Party" under the ECT.  *See*, *e.g.*, Interim Award ¶ 395 (noting that Russia "does not dispute that [Yukos Capital] meets the definition of 'Investor'" under the ECT).  By becoming a party to the ECT, therefore, Russia agreed to submit to arbitration of disputes between itself and Yukos Capital "relating to an Investment of the latter in the Area of the former, which concern an alleged breach of an obligation of the former under Part III."  ECT, art. 26(1).  Russia gave its "unconditional consent to the submission of [such] dispute[s] to international arbitration or conciliation in accordance with the provisions of [Article 26 of the ECT]."  *Id.*, art. 26(3).

Following the expropriation of Yukos Oil by Russia, Yukos Capital initiated arbitration proceedings against Russia on February 15, 2013, pursuant to the arbitration provision in the Energy Charter Treaty ("ECT") and the 1976 UNCITRAL Rules, seeking to recover the

approximately $3 billion in loans to Yukos Oil expropriated by Russia (exclusive of interest and penalties).  Award ¶ 8; Notice of Arbitration at 1-2, 70.

## III.    An Arbitral Tribunal Awards Yukos Capital More Than $5 Billion

By February 18, 2014, a three-member arbitral tribunal (the "Tribunal") was constituted comprising of J. William Rowley QC (appointed by Yukos Capital), Professor Brigitte Stern (appointed by Russia), and Professor Campbell McLachlan QC as the presiding arbitrator (appointed by the secretary general of the PCA).  Award ¶¶ 9-14.

In addition to considering the written submission put forward by both parties, the Tribunal conducted 16 days of hearings: a preliminary procedural hearing in Vienna, Austria, on April 14, 2014; a five-day Hearing on Jurisdiction in The Hague, Belgium, between August 31 and September 4, 2015; and a ten-day Hearing on the Merits in London, England, between July 1 and 12, 2019.  Award ¶¶ 18, 24, 88.  The Tribunal rejected a series of jurisdictional objections raised by Russia, *id.* ¶¶ 28-29; *see generally* Interim Award ¶¶ 44-567, and a two-member majority of the Tribunal issued the Final Award, a 303-page decision.  The Award determined *inter alia* that Russia had breached its obligations under the ECT and that Yukos Capital was entitled to be compensated for damages and losses resulting from Russia's illegal expropriation of Yukos Capital's investment, subject to a reduction to account for certain losses that the Tribunal deemed foreseeable and/or proximately caused (in whole or in part) by Yukos Capital and, therefore, irrecoverable.  Award ¶¶ 440, 683-85, 697-99; Pet. ¶ 35.  The Tribunal ultimately ordered Russia to pay $5,033,254,794.28—an amount comprising the unpaid loan principal, unpaid contractual interest, pre-award interest, and reimbursement of Yukos Capital's share of the arbitration costs and reasonable legal costs and expenses.  Award ¶ 898.

However, Russia has not complied with its obligation to pay Yukos Capital the full amount of the Award.  Instead, Russia filed an application in the First Civil Court of the Swiss Federal

Tribunal on September 14, 2021, seeking to set aside the Interim and Final Awards and to stay enforcement of both Awards pending resolution of Russia's set-aside application.  Pet. ¶ 38.  The Swiss court has not yet ruled on the merits of Russia's set-aside application, but Russia's request temporarily to stay enforcement was denied on November 1, 2021, ECF No. 1-4 at 3; Pet. ¶ 39.

## IV.    Yukos Capital Seeks To Confirm Its Arbitral Award In This Court

On March 23, 2022, Yukos Capital filed its Petition to Enforce Arbitral Award, seeking to convert the Final Award into a judgment pursuant to the New York Convention, and its implementing legislation, the Federal Arbitration Act, 9 U.S.C. §§ 201-208.  ECF No. 1.  For relief, Yukos Capital sought "an order (a) confirming the Award pursuant to the New York Convention, and (b) entering judgment in Yukos Capital's favor in the amount specified in the Award," as well as pre- and post-judgment interest.  Pet. ¶ 50; *id*. at 16-17 (prayer for relief).

Yukos Capital then effected service under the FSIA, 28 U.S.C. § 1608(a)(3) by requesting that the Clerk of Court dispatch copies, together with Russian translations, of the Petition and exhibits thereto, ECF Nos. 1 & 1-2-1-6, 1-9; Summons, ECF No. 3; [Proposed] Order, ECF No. 1-7; Civil Cover Sheet, ECF No. 1-8; the Standing Order signed by the Court, ECF No. 4; and a Notice of Suit (collectively, the "Service Documents"), to Russia's Foreign Minister, Sergei Lavrov.  *See* ECF No. 10.  Since Russia's invasion of Ukraine, DHL and other major U.S. mail carriers have suspended mail delivery to Russia.  ECF No. 10-1, at 2.  Yukos Capital accordingly requested on June 7, 2022 that the Clerk dispatch the Service Documents to Lavrov by way of delivery to Condor, a foreign courier service capable of delivery to Russia by form of mail requiring a signed receipt.  ECF No. 10.  The Clerk certified that the service documents were dispatched that same day by DHL to Condor.  ECF Nos. 12, 12-1.  DHL delivered the documents to Condor on June 15, 2022, ECF No. 13-2, and Condor delivered the service documents to

Mr. Lavrov on June 29, 2022, ECF Nos. 13-3, 13-4.  On July 21, 2022, Yukos Capital docketed a return of service reflecting proof of delivery.  ECF No. 13.

After Russia failed to respond to the Petition within sixty days as required by § 1608(d), Yukos Capital filed a Request for Entry of Default on September 6, 2022.  ECF No. 14.  The clerk duly entered a notice of default on September 9, 2022.  ECF No. 17.

The same day that the clerk docketed the notice of default, counsel for Russia sent the Court a motion to dismiss the petition, which the Court docketed on September 19, 2022.  ECF No. 18.  The motion to dismiss raises only one issue, arguing that Yukos Capital was required to effect service of the Petition through diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4) rather than through the clerk of court pursuant to § 1608(a)(3).  ECF No. 18 at 1-5.  Yukos Capital filed its opposition to Russia's motion to dismiss contemporaneously with this motion, arguing that service of process pursuant to § 1608(a)(3) was proper and permitted by the FSIA.

## ARGUMENT

Under 28 U.S.C. § 1608(e) of the FSIA and Federal Rule of Civil Procedure 55(b)(2), a default judgment is proper when a petitioner establishes its "claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e).  To meet this burden, a petitioner may "'suppor[t]'" its allegations by "'documentary and affidavit evidence,'" *Firebird Global Master Fund II Ltd. v. Republic of Nauru*, 915 F. Supp. 2d 124, 126 (D.D.C. 2013), and is not required "to rebut . . . hypothetical . . . defense[s]," *Maalouf v. Islamic Republic of Iran*, 923 F. 3d 1095, 1113 (D.C. Cir. 2019); *see also id.* ("It is not the responsibility of the courts to act *sua sponte* to raise affirmative defenses on behalf of defendants who do not appear.").

Here, Yukos Capital is entitled to a default judgment confirming the Award against Russia and entering a judgment in its favor in the amount of the Award because it has adhered to the provisions of the FSIA, the New York Convention, and the FAA.  Yukos Capital—through the

Clerk of Court—executed service of process on Russia.  *See* ECF No. 13.  When Russia failed to timely respond, Yukos Capital requested and obtained an entry of default against Russia.  *See* ECF Nos. 14, 17.  In addition, Yukos Capital complied with the requirements of the New York Convention by filing an apostilled copy of the arbitral award and a copy of the ECT containing the agreement to arbitrate.  *See* New York Convention, art. IV(1); *see* ECF Nos. 1-2, 1-5.

Because these procedural requirements have been satisfied, the FAA directs the Court to "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U. S. C. § 207; *see also Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) ("[T]he FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards.").  But the party resisting confirmation "bears the heavy burden of establishing that one of the grounds for denying confirmation" applies.  *Gold Reserve, Inc. v. Bolivian Republic of Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015).  "Given [Russia]'s default status in this case, it obviously has not put forth any arguments against confirmation."  *Sterling Merch. Fin. Ltd. v. Republic of Cabo Verde*, 261 F. Supp. 3d 48, 53 (D.D.C. 2017) (granting default judgment).  Accordingly, and for the reasons set forth below, this Court should enter a default judgment and grant Yukos Capital the relief it seeks in its Petition to Confirm Arbitral Award.

## I.    This Court Has Subject-Matter Jurisdiction Over This Action And Personal Jurisdiction Over Russia Under The FSIA

At the threshold, this Court has subject-matter jurisdiction over this action and personal jurisdiction over Russia.  Under the FSIA, a "foreign state is presumptively immune from the jurisdiction of United States courts."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  But the FSIA enumerates several exceptions to this immunity.  *See generally* 28 U.S.C. § 1605.  Specifically, the FSIA grants federal courts subject-matter jurisdiction over "any nonjury civil

action against a foreign state . . . with respect to which the foreign state is not entitled to immunity."

28 U.S.C. § 1330(a).  And it confers "[p]ersonal jurisdiction over a foreign state . . . as to every

claim for relief over which the district courts have [subject-matter] jurisdiction" under § 1330(a).

*Id.* § 1330(b).  Two exceptions to immunity—the waiver exception, *id.* § 1605(a)(1), and the

arbitration exception, *id.* § 1605(a)(6)—apply here and establish this Court's subject-matter

jurisdiction and personal jurisdiction with respect to this case.

**The Waiver Exception**:  The FSIA's waiver exception provides that a foreign state is

subject to jurisdiction in any case in which it "has waived its immunity either explicitly or by

implication."  28 U.S.C. § 1605(a)(1).  Pursuant to Section 1605(a)(1) of the FSIA, Russia is not

immune from jurisdiction because this is a proceeding to confirm an arbitral award pursuant to the

New York Convention, and Russia implicitly waived its immunity from jurisdiction over such

proceedings by agreeing to that Convention.  *See Tatneft v. Ukraine*, 771 F. App'x 9, 9-10 (D.C.

Cir. 2019) (per curiam); *Creighton Ltd. v. Gov. of the State of Qatar*, 181 F.3d 118, 123 (D.C. Cir.

1999).[1]

**The Arbitration Exception**:  This Court also possesses subject-matter jurisdiction via the

FSIA's arbitration exception.  That exception permits a proceeding against a foreign state to

"confirm an award" made pursuant to an agreement "by the foreign state," "with or for the benefit

of a private party," to "submit to arbitration," if the "award is . . . governed by a treaty," such as

the New York Convention, which is "in force for the United States" and "call[s] for the recognition

and enforcement of arbitral awards."  28 U.S.C. § 1605(a)(6).  It is well settled that the New York

Convention falls within the ambit of § 1605(a)(6).  *See*, *e.g.*, *Chevron Corp. v. Ecuador*, 795 F.3d

---

[1]  *See also* http://www.newyorkconvention.org/countries (listing Russia as a party to the New York Convention).

200, 203 (D.C. Cir. 2015); *Creighton*, 181 F.3d at 123-24 (The New York Convention is "'exactly the sort of treaty Congress intended to include in the arbitration exception.'").

Congress codified the New York Convention in the FAA. *See* 9 U.S.C. §§ 202 *et seq.* The FAA, in turn, provides that any "action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States" and that the "district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy," *id.* § 203. The FAA (and therefore the Convention) applies to an "arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial," unless that relationship is entirely between U.S. citizens and lacks other significant foreign connection. *Id.* § 202. Thus, the FAA applies when "'(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope.'" *Africard Co. Ltd. v. Republic of Niger*, 210 F. Supp. 3d 119, 123 (D.D.C. 2016).

Yukos Capital's action satisfies these requirements:

*First*, the ECT is a written agreement that provides for arbitration of "[d]isputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former." ECT, art. 26(1). As the Tribunal recognized, that arbitration provision applies to this dispute because at all pertinent times Russia was a Contracting Party to the ECT, Yukos Capital was an Investor of Luxembourg—another Contracting Party to the ECT— and the arbitration concerned an investment of Yukos Capital in Russia's territory. *See* Award ¶ 503 (reiterating that Yukos Capital's "Loans constitute an investment that the Claimant has made in the territory of the Respondent such that its jurisdiction under the ECT is engaged"); *see also id.* ¶¶ 168, 193-209. During the arbitration, Russia contested the application of this provision to

this dispute on several grounds, but the Tribunal rejected all of them.  *Id*. ¶¶ 168-242.  As the D.C. Circuit held in analogous circumstances, "[the Court] must accept the arbitral tribunal's determination that [Petitioner]'s claim fell within the ECT."  *Stileks v. Republic of Moldova*, 985 F.3d 871, 879 (D.C. Cir. 2021); *see also*, *e.g.*, *Chevron*, 795 F.3d at 207 (D.C. Cir. 2015) (finding "no[] need to reach the question of whether [petitioner's] lawsuits fell within the terms of submission to arbitration because the [treaty] allows the arbitration tribunal to make that determination").  In *Chevron*, Chevron's "burden of supporting its claim that the [arbitration] exception applies" was met by "producing the BIT [*i.e.*, the treaty providing for arbitration of the underlying dispute], Chevron's notice of arbitration against Ecuador, and the tribunal's arbitration decision."  *Id.* at 204-05.  Yukos Capital has likewise provided a copy of the ECT, ECF No. 1-5, its Notice of Arbitration, ECF No. 1-3, and the Award, ECF No. 1-2.

*Second*, the ECT also provides for arbitration "in the territory of a signatory of the convention."  *Africard Co. Ltd.*, 210 F. Supp. 3d at 123.  Specifically, Article 26(4)(b) of the ECT permits an Investor to elect arbitration pursuant to the UNCITRAL Rules, as Yukos Capital did here.  Award ¶ 8.  Pursuant to those Rules, the arbitration was seated in Switzerland, *id.* ¶ 30, a party to the New York Convention, *see* https://bit.ly/3SqxtSL; *cf. Tatneft v. Ukraine*, 301 F. Supp. 3d 175 (D.D.C., 2018) (recognizing an award pursuant to 9 U.S.C. §§ 202 *et seq* issued by an ad hoc Tribunal seated in France, a party to the New York Convention), *aff'd* 771 F. App'x 9 (D.C. Cir. 2019) (per curiam).

*Third*, the subject matter of the agreement is commercial, which refers to "'matters or relationships, whether contractual or not, that arise out of or in connection with commerce.'"  *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 103-04 (D.C. Cir. 2015).  The ECT expressly provides in Article 26 that "[c]laims submitted to arbitration hereunder shall be considered to arise

out of a commercial relationship or transaction for the purposes of article I of [the New York] Convention." ECF No. 1-5 at art. 26(5)(b). Thus, Russia, a party to the ECT, has agreed that the relationship between it and Yukos Capital is commercial in nature under the New York Convention and FAA. *See Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 186 (D.D.C. 2016) (finding that, by being party to the ECT, Kazakhstan had agreed that its relationship with petitioner was commercial).

Finally, the agreements relate to a foreign state and are not entirely domestic in scope because neither party to the agreement is a United States citizen and the dispute concerns an investment in Russia. *See*, *e.g.*, Award ¶ 503 ("[T]he Tribunal has already found (by majority) in its Interim Award that the Loans constitute an investment that the Claimant has made in the territory of the Respondent such that its jurisdiction under the ECT is engaged.").

This Court, therefore, possesses subject-matter jurisdiction over this action and personal jurisdiction over Russia pursuant to the FSIA's waiver and arbitration exceptions.

## II. Yukos Capital Served Russia Pursuant To The FSIA

Yukos Capital properly served process in this action, and Russia defaulted by failing to adequately respond.[2] The FSIA's "hierarchical" framework for serving process "on 'a foreign state'" lays out "four methods" that must be attempted sequentially until one succeeds. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019) (quoting 28 U.S.C. § 1608(a)). Yukos Capital executed service of process on Russia pursuant to the FSIA's third method because the first two methods were unavailable.

---

[2]  *See generally* Petitioner's Opposition to Respondent's Motion to Dismiss dated September 26, 2022 ("MTD Opp."), ECF No. 19, for a more fulsome analysis.

The FSIA's first method—service by "any special arrangement for service between the plaintiff and the foreign state," 28 U.S.C. § 1608(a)(1)—does not apply because Yukos Capital and Russia do not have any special arrangement for service of process in an arbitration enforcement action. Yukos Capital was not required to attempt service under the FSIA's second method, which requires service pursuant to any "applicable international convention on service of judicial documents," *id.* § 1608(a)(2), because Russia expressly "refuses to serve letters of request from the United States for service of process" pursuant to the terms of the "applicable international convention"—the Hague Service Convention—to the United States, *Russian Federation: Service of Process*, Travel.State.Gov, [bit.ly/3DJjGmq](bit.ly/3DJjGmq). Russia's declaration submitted pursuant to the Convention states that it "shall not apply the Convention in relation to" any "Contracting State" whose central authority imposes a fee to cover the costs of service within that State. Russian Federation, Declaration VIII (Dec. 3, 2004), [bit.ly/3BzjgMD](bit.ly/3BzjgMD). Russia has applied that declaration to the United States "based on objections to a fee" the United States imposes "to cover the costs incurred" by the United States in effecting service under the convention. *Russian Federation: Service of Process*, *supra*. Service of U.S. process through Russia's designated central authority is therefore impossible, as Russia concedes. ECF No. 18 at 3; *see also* MTD Opp. at 3.

Yukos Capital thus effected service on Russia via the FSIA's third method—"sending a copy of the summons and complaint and a notice of suit . . . by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3); ECF No. 10. Owing to Russia's invasion of Ukraine, DHL and other major U.S. mail carriers have suspended mail delivery to Russia. *See* ECF No. 10-1, at 2. Yukos Capital accordingly requested on June 7, 2022, that the Clerk of the Court dispatch the service documents to Russia's Foreign Minister, Sergei

Lavrov, by way of delivery to Condor, a foreign courier service capable of delivery to Russia by form of mail requiring a signed receipt.  ECF No. 10.  The Clerk certified that the service documents were dispatched that same day by DHL to Condor.  ECF No. 12, 12-1.  DHL delivered the documents to Condor on June 15, 2022, ECF No. 13-2, and Condor delivered the service documents to Mr. Lavrov on June 29, 2022, ECF No. 13-3, 13-4.  On July 21, 2022, Yukos Capital docketed a return of service reflecting proof of delivery.  ECF No. 13.

Under § 1608(c)(2), service was effective "as of the date of receipt."  28 U.S.C. § 1608(c)(2).  Russia, therefore, was required to serve an answer or other responsive pleading "within sixty days after service has been made."  *Id.* § 1608(d).  After more than 60 days elapsed without Russia filing an answer or other responsive pleading to the Petition, Yukos Capital accordingly requested the Clerk of Court to enter default, *see* ECF No. 15, and the Clerk of Court properly did so on September 9, 2022, *see* ECF No. 16.

Only *after* entry of default did Russia respond to the petition, moving to dismiss the enforcement petition for lack of proper service.  *See* ECF Nos. 18.  But as explained in Yukos Capital's opposition to that motion, filed contemporaneously with this motion for default judgment, Russia's objections to service of process are meritless.  This Court should therefore conclude that Yukos Capital properly effected service on Russia pursuant to § 1608(a)(3) for the reasons stated in Yukos Capital's opposition to Russia's motion to dismiss.

## III.   The Award Should Be Confirmed Under The New York Convention

The New York Convention is a multilateral treaty providing for the recognition and enforcement of foreign arbitral awards.  *See* New York Convention, art. I § 1.  Once a petitioner satisfies the procedural requirements of the New York Convention and its implementing legislation, *see id.* IV(1), the FAA provides that this Court "*shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in

said Convention." *Energoinvest DD v. Democratic Republic of Congo*, 355 F. Supp. 2d 9, 11 (D.D.C. 2004) (quoting 9 U.S.C. § 207) (emphasis added); *see also Africard*, 210 F. Supp. 3d at 127 (recognizing "'little discretion'" under New York Convention to deny confirmation of an arbitral award). Yukos Capital has complied with the Convention's procedural requirements, and none of the limited defenses applies.

**1.** "'Consistent with the 'emphatic federal policy' in favor of arbitral dispute resolution,'" *Africard*, 210 F. Supp. 3d at 127, the New York Convention and FAA impose few procedural requirements for petitioners seeking to confirm an arbitral award. Section 207 of the FAA, for example, provides that "any party to the arbitration may apply . . . for an order confirming the award as against any other party to the arbitration" within three years after the arbitral award has been issued. 9 U.S.C. § 207. And the party seeking confirmation must submit: (1) the "duly authenticated original award or a duly certified copy thereof" and (2) the "original agreement [to arbitrate] . . . or a duly certified copy thereof." New York Convention, art. IV(1).

Here, the Petition and accompanying exhibits that Yukos Capital submitted satisfy the requirements of Article IV of the New York Convention. *See* ECF Nos. 1, 1-2, 1-3, 1-5. Attached to the Petition were: (1) a duly apostilled copy of the Award, ECF No. 1-2, and (2) copies of the ECT containing the agreement to arbitrate and of the Notice of Arbitration, ECF Nos. 1-3 & 1-5. Russia's "consent given in [Article 26(3)] together with the written consent of the Investor . . . satisfy the requirement for[] . . . an 'agreement in writing' for purposes of [the New York Convention]." ECT, art. 26(5). The Award was rendered on July 23, 2021, and Yukos Capital filed its Petition on March 23, 2022, well within three years. *See* 9 U.S.C. § 207. Yukos Capital has therefore satisfied the procedural requirements of the New York Convention, and this Court

"*shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207 (emphasis added).

**2.** Article V(1) of the New York Convention enumerates five grounds under which a court may refuse recognition and enforcement of an award "at the request of the party against whom it is invoked"—the respondent to a petition seeking recognition of an arbitral award:

(A)  The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(B)  The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(C)  The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ; or

(D)  The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or

(E)  The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention, art. V(1).

As "[t]he party resisting confirmation," Russia "'bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies.'" *Compagnie Sahelienne d'Entreprise v. Republic of Guinea*, 2021 WL 2417105, at *4 (D.D.C. June 14, 2021) (quoting *Sterling Merch. Fin. Ltd. v. Rep. of Cabo Verde*, 261 F. Supp. 3d 48, 51 (D.D.C. 2017)). "Here, [Russia] has defaulted and not raised any of these defenses; it has thus not met its burden." *Id.*  Courts routinely grant motions for default judgment when, as here, the petitioner satisfies the procedural requirements of the New York Convention and the defaulting foreign sovereign defendant has not met its burden of proof on its defenses. *E.g.*, *Customs & Tax Consultancy LLC v.*

*Democratic Republic of Congo*, 2019 WL 4602143, at *5 (D.D.C. Sept. 23, 2019) (entering default judgment confirming award under the New York Convention against the Democratic Republic of Congo); *Sterling*, 261 F. Supp. 3d at 53 ("Given [foreign sovereign's] default status in this case, it obviously has not put forth any arguments against confirmation."); *Africard*, 210 F. Supp. 3d at 127 ("Given Niger's lack of appearance in this matter, it has not met its burden on any of those objections.").

Nor could Russia prevail on these defenses even if it had raised them.  As for (A), Russia has no basis to claim that as a foreign sovereign, it did not have the necessary capacity to enter ECT, or that the ECT was in violation of Russian law.  By a two-member majority, the Tribunal concluded that Russia consented to arbitrate disputes under Article 26(3)(a) by virtue of its provisional application of the ECT, overruling Russia's argument to the contrary.  *See* ECF No 1-2 ¶ 19(i).  (B) and (D) are plainly inapplicable because Russia participated fully in the arbitration and in the constitution of the Tribunal.  *See also Customs & Tax Consultancy*, 2019 WL 4602143, at *5 n.5 (finding defenses inapplicable when DRC participated in arbitration and constituted tribunal according to parties' agreement).  (C) is likewise inapplicable because the Tribunal's ruling "fall[s] squarely within the issues raised by the parties in their submissions."  *Id.*; *see* Award ¶¶ 169-897. As for (E), the Award is final and binding on the parties.  *See*, *e.g.*, *Techsnabexport v. Globe Nuclear Serv.*, 404 F. App'x 793, 799 (4th Cir. 2010) ("An award is final in nature when the arbitrators intend to include in the award their complete determination of all claims submitted for arbitration.").  The pendency of Russia's application in Swiss court to set aside the Award, *see* Pet. ¶ 38, does not impact the finality and the binding nature of the Award.  *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 697 F. Supp. 2d 46, 58-59 (D.D.C. 2010) (finding Article V(1)(E) "inapplicable" because Nigeria's application "to a court of competent jurisdiction . . . to set aside the Award" offered "no

evidence" of "any ruling whatsoever on the substantive validity of the award"). In fact, the Swiss court's rejection of Russia's request for a temporary stay, Pet. ¶ 39, "weighs in favor of immediate enforcement." *G.E. Transp. S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 139 (D.D.C. 2010).

In addition to the above Article V(1) bases for denying confirmation, Article V(2) provides "two additional grounds for denying recognition of an arbitral award, whether the respondent asserts them or not: '(a) The subject matter of the difference is not capable of settlement by arbitration under the law of [the country where enforcement is sought]; or (b) The recognition or enforcement of the award would be contrary to the public policy of that country.'" *Africard*, 210 F. Supp. 3d at 127 (quoting the New York Convention, art. V(2)).

Neither ground applies here. The subject matter of the dispute—expropriation of assets— is commonly settled by arbitration in the United States. *See, e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 121 (D.D.C. 2017). And in light of the "'emphatic federal policy in favor of arbitral dispute resolution,'" the recognition or enforcement of the Award is not contrary to the public policy of the United States. *Customs & Tax Consultancy*, 2019 WL 4602143, at *6; *Africard*, 210 F. Supp. 3d at 128 (same).

Accordingly, there is no basis under the New York Convention to deny Yukos Capital's request for default judgment that confirms the Award and enters a judgment in the amount of the Award.

## IV. This Court Should Enter Judgment In The Amount Of The Award, Plus Interest

This Court should order Russia to pay the Award plus prejudgment interest at a rate of 3.82%, compounded annually and subject to any necessary adjustments (*see infra*), and postjudgment interest at the rate specified in 28 U.S.C. § 1961. "A presumption exists in favor of prejudgment interest in actions to confirm arbitral awards under the New York Convention, such that absent any reason to the contrary, prejudgment interest should normally be awarded when

damages have been liquidated by an international arbitral award.  In addition, where, as here, an arbitral award grants pre-award interest but is 'silent' on whether a party should recover post-award interest—*i.e.*, prejudgment interest—granting such prejudgment interest is consistent with the award." *LLC Komstroy v. Republic of Moldova*, 2019 WL 3997385, at *14 (D.D.C. Aug. 23, 2019) (citing *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 156 (D.D.C. 2013); alterations, quotation marks, and internal citations omitted), *aff'd in relevant part and remanded sub nom. LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871 (D.C. Cir. 2021); *see also* Award at 302 (granting pre-award interest).  "[T]he D.C. Circuit has explained that the prime rate—the rate banks charge for short-term unsecured loans to creditworthy customers—is the most appropriate measure of prejudgment interest." *Schwartz v. Islamic Republic of Iran*, 2022 WL 1567358, at *6 (D.D.C. May 18, 2022).  "Based on the information made available by the Federal Reserve, it appears that the average daily prime rate during the period from [the date of the Award, July 23, 2021]" through the date of filing of this motion, was 3.82%.  *See Cont'l Transfert*, 932 F. Supp. 2d at 165 (awarding prejudgment interest at the average daily prime rate for the period between the date of Award and the date of the Court's Order and Judgment).[3]

Accordingly, the Court should enter judgment ordering Russia to pay the amount of the Award plus prejudgment interest at a rate of 3.82% (adjusted as necessary based on changes to the daily prime rate prior to entry of judgment), compounded annually, from July 23, 2021 until the date when judgment is entered, and postjudgment interest at the rate specified in 28 U.S.C. § 1961.

---

[3]   Bd. of Governors of Fed. Reserve Sys., *Data Download Program*, https://bit.ly/3LCaD8A. The average daily prime rate was calculated by averaging the daily prime rates over the 431-day period between July 23, 2021, and September 26, 2022: the rate was 3.25% for 237 days (Jul 23, 2021 – March 16, 2022), 3.5% for 49 days (March 17 – May 4, 2022), 4% for 42 days (May 5 – June 15, 2022), 4.75% for 42 days (June 16 – July 27, 2022), 5.5% for 56 days (July 28 – September 21, 2022), and 6.25% for 5 days (September 22–26, 2022).  (3.25% x 237 + 3.5% x 49 + 4% x 42 + 4.75% x 42 + 5.5% x 56 + 6.25% x 5) ÷ 431 = 3.82%.

**CONCLUSION**

For the reasons set forth above, Yukos Capital respectfully requests that the Court enter a default judgment confirming the Award and ordering Russia to pay $5,033,254,794.28 plus prejudgment interest at a rate of 3.82% (adjusted as necessary based on changes to the daily prime rate prior to entry of judgment), compounded annually, from July 23, 2021, until the date when judgment is entered, and postjudgment interest at the rate specified in 28 U.S.C. § 1961.

Dated: September 26, 2022

Respectfully submitted,

/s/ *Matthew S. Rozen*_____

Robert Weigel (*pro hac vice*)
rweigel@gibsondunn.com
Jason Myatt (*pro hac vice*)
jmyatt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone:  212.351.4000
Facsimile:   212.351.4035

Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:    202.955.8500
Facsimile:      202.467.0539

*Attorneys for Yukos Capital Limited*